UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| CHRISTOL L. WHITE, | ) |
|     Claimant, | ) ) ) |
| vs. | ) ) Case No. 2:18-cv-0021-CLS ) |
| NANCY A. BERRYHILL, Acting Commissioner, Social Security Administration, | ) ) ) ) |
|     Defendant. | ) ) |

**MEMORANDUM OPINION**

Claimant, Christol L. White, commenced this action on January 5, 2018, pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner, affirming the decision of the Administrative Law Judge ("ALJ"), and thereby denying her claim for supplemental security income benefits.

The court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of review is limited to determining whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and whether correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983).

Claimant contends that the Commissioner's decision is neither supported by

substantial evidence nor in accordance with applicable legal standards because the ALJ improperly considered the opinions of the treating and examining physicians. Upon review of the record, the court concludes that these contentions are without merit, and the Commissioner's decision should be affirmed.

The opinion of a treating physician "must be given substantial or considerable weight unless 'good cause' is shown to the contrary." *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004) (internal citations omitted). Good cause exists when "(1) [the] treating physician's opinion was not bolstered by the evidence; (2) [the] evidence supported a contrary finding; or (3) [the] treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Id*. (alterations supplied). Additionally, the ALJ is not required to accept a conclusory statement from a medical source, even a treating source, that a claimant is unable to work, because the decision whether a claimant is disabled is not a medical opinion, but is a decision "reserved to the Commissioner." 20 C.F.R. § 416.927(e).

Social Security regulations also provide that, in considering what weight to give *any* medical opinion (regardless of whether it is from a treating or non-treating physician), the Commissioner should evaluate: the extent of the examining or treating relationship between the doctor and patient; whether the doctor's opinion can be supported by medical signs and laboratory findings; whether the opinion is

consistent with the record as a whole; the doctor's specialization; and other factors. *See* 20 C.F.R. § 416.927(d). *See also Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986) ("The weight afforded a physician's conclusory statements depends upon the extent to which they are supported by clinical or laboratory findings and are consistent with other evidence as to claimant's impairments.").

Claimant first asserts that the ALJ improperly considered the opinion of Dr. Graham Osula, her treating psychiatrist. Dr. Osula submitted a generalized note addressed "To Whom It May Concern" on July 6, 2016. He stated claimant's diagnoses as major depressive disorder, recurrent, severe, without psychosis; generalized anxiety disorder; and post traumatic stress disorder. Her medications included Seroquel for mood swings, Celexa for depression and anxiety, and Xanax for anxiety. He also stated:

> Being her Psychiatrist does not necessarily give me the ability to categorically state that Ms[.] White cannot be gainfully employed as I only see her for approximately 30 minutes once every 3 months and as such I do not have as in[-]depth knowledge of her life and day to day activities. What I can say is that often, people with some of the diagnos[e]s that Ms[.] White has are unable to hold gainful employment and do not function well in settings that require structure, routine, responsibility, coordination and interaction.
>
> She has also pointed out to me that she is unable to read and was unable to complete schooling due to being around people. She says she was put out of school in the 8th grade.

Tr. 740 (alterations supplied).

3

Dr. Osula also submitted a "Supplemental Questionnaire" on January 14, 2017. He indicated that claimant experienced moderate restriction of activities of daily living; marked difficulty in maintaining social functioning; extreme deficiencies of concentration, persistence, or pace resulting in frequent failure to complete tasks in a timely manner; extreme impairment of ability to respond to customary work pressures; marked impairment of ability to understand, carry out, and remember instructions in a work setting; marked impairment of ability to respond appropriately to supervision; marked impairment of ability to respond appropriately to co-workers in a work setting; and, marked impairment of ability to perform simple and repetitive tasks in a work setting. Claimant's limitations had lasted or could be expected to last for twelve months or longer, and they would persist without consideration of substance abuse.[1]

Dr. Osula's imposition of marked to extreme limitations would tend to indicate that claimant is unable to work, but the ALJ afforded Dr. Osula's opinions only little weight, because they were not supported by the doctor's own treatment notes or the other medical evidence.[2] Specifically, Dr. Osula's notes indicate that claimant experienced improvement in her condition with treatment, and no adverse side effects

---

[1] Tr. 741-42.
[2] Tr. 23.

4

from her medications.³ Additionally, claimant consistently received normal reports from mental status examinations when she presented for treatment at the emergency department or with her regular physician.⁴ Those conclusions are consistent with applicable law and supported by substantial evidence of record.

Claimant argues that the ALJ's decision was improper because claimant's medical records reflect that she has ongoing diagnoses of generalized anxiety disorder, major depressive disorder, and post-traumatic stress disorder, and she experiences ongoing symptoms of anxiety, fear of abandonment, shame, anger, and feelings of betrayal. But the mere existence of those diagnoses and symptoms is not sufficient to establish claimant's disability. Instead, the relevant consideration is the effect of claimant's conditions and symptoms on her ability to perform substantial gainful work activities. *See* 20 C.F.R. § 416.905(a) (defining a disability as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months"). *See also Bowen v. Yuckert,* 482 U.S. 137, 146 (1987) ("The [Social Security] Act 'defines "disability" in terms of the effect a physical or mental impairment has on a person's ability to function in the workplace.'") (quoting *Heckler*

---

³ *See* Tr. 750, 763, 783.

⁴ *See* Tr. 295, 323, 349, 368, 377, 412, 433, 453, 516, 519, 523, 595, 599, 604, 615, 620, 627, 632, 636, 653, 658, 668, 673.

*v. Campbell,* 461 U.S. 458, 459-60 (1983)) (alteration supplied). The only indication claimant provides of the effect of her condition on her functional abilities is to point out that her therapist observed on one occasion that claimant's anger affected her relationships.[5] That singular statement sheds very little light upon claimant's ability to sustain work activity on a continued basis.

Additionally, claimant points to the fact that her therapist assigned her a GAF score of 48 on July 6, 2016, and indicated that her highest GAF score of the past year was 50. Both scores represent serious symptoms and serious functional impairments, but a single GAF score is of limited value in evaluating a claimant's overall ability to work. As the United States District Court for the Middle District of Florida stated in an unpublished but persuasive opinion:

> The former version of American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (4th ed. 2000), includes the GAF scale used by mental-health practitioners to report "the clinician's judgment of the individual's overall level of functioning" and "may be particularly useful in tracking the clinical progress of individuals in global terms, using a single measure." Manual at 32-34. The latest edition of the Manual has abandoned the GAF scale because of "its conceptual lack of clarity . . . and questionable psychometrics in routine practice." Diagnostic and Statistical Manual of Mental Disorders 16 (5th ed. 2013). Even before that abandonment, "the Commissioner . . . declined to endorse the GAF scale for use in the Social Security and SSI disability programs, and . . . indicated that GAF scores have no direct correlation to the severity requirements of the mental disorders listings." *Wind v. Barnhart*, 133 Fed. Appx. 684, 692 n.5 (11th Cir. 2005) (internal quotations omitted) (citing 60 Fed. Reg. 50746, 50764-

---

[5] *See* Tr. 750; doc. no. 9 (claimant's brief), at 6.

65 (Aug. 21, 2000)).

> In July 2013, the SSA issued Administrative Message (AM)-13066, providing its adjudicators, including ALJs, with internal guidance regarding the interpretation of GAF rating. Soc. Sec. Admin., Global Assessment of Functioning (GAF) Evidence in Disability Adjudication, AM-13066 (July 22, 2013) REV (Oct. 14, 2014). AM-13066 acknowledged DSM-5 eliminated the use of GAF but confirmed that adjudicators will continue to consider GAF scores as opinion evidence. As with other opinion evidence, however, a GAF needs supporting evidence to be given much weight. *Id*. According to AM-13066, "the extent to which an adjudicator can rely on the GAF rating as a measure of impairment severity and mental functioning depends on whether the GAF rating is consistent with other evidence, how familiar the rater is with the claimant, and the rater's expertise." *Id*. The SSA cautions that a "GAF score is never dispositive of impairment severity," and an ALJ should "not give controlling weight to a GAF from a treating source unless it is well[-]supported and not inconsistent with the other evidence." *Id*. AM-13066 explains that because a GAF rating is only a "snapshot," it "does not provide a reliable longitudinal picture of the claimant's functioning for a disability analysis" unless the clinician "clearly explains the reasons behind his or her GAF rating, and the period to which the rating applies." *Id*. § E.

*Murry v. Commissioner*, No. 3:16-CV-48-J-PDB, 2017 WL 894626, at *6 n.10 (M.D. Fla. Mar. 7, 2017) (alterations in original). It is true that the ALJ did not mention claimant's GAF score, but that failure amounts to, at worst, harmless error. The GAF score is only one piece of evidence bearing on claimant's disability status, and the ALJ was entitled to reject it for the same reasons that he rejected Dr. Osula's assessment of disabling limitations.

Claimant also argues that the ALJ improperly considered the opinion of

7

Michael Holt, Ph.D, the consulting psychologist who examined claimant on January 6, 2015. Claimant reported that she experienced problems with attention, anxiety, depressed mood, irritability, mood swings, crying spells, fatigue, social withdrawal, attention, concentration, and memory, but she was not taking any medication at that time. Claimant presented to the examination with minimally adequate hygiene and mildly disheveled appearance. She was fidgety and restless, constantly moving her legs and feet back and forth during the interview. Claimant's speech, language, and communication skills were adequate, although she did have some difficulty understanding complicated questions and instructions. Her mood was nervous, and her affect was mildly reactive and labile. She was mildly to moderately distressed, especially when discussing her past abuse. Dr. Holt assessed claimant's intelligence as falling within the borderline range, and her working memory and processing speed skills as falling within the extremely low range. Claimant's daily activities included house cleaning, cooking, caring for her children, and watching television. Dr. Holt assessed claimant as suffering from persistent depressive disorder with major depressive episodes, post-traumatic stress disorder, oppositional defiant disorder, tobacco use disorder, and borderline intellectual functioning. She had extremely limited adaptive and coping resources, and her prognosis was guarded due to the severity and chronicity of her conditions. Dr. Holt observed that claimant's

motivation and engagement during the clinical examination were minimally adequate.

Dr. Holt concluded that claimant

> cannot manage financial benefits because of issues with intellectual functioning, judgment, and insight. The patient's mental impairments are off [*sic*] at least moderate severity. The patient could not function adequately in an independent manner.
>
> It is the examiner's opinion that the claimant's ability to understand, remember, and carry out instructions in the workplace is mildly impaired for simple instructions and moderately impaired for complex instructions. Her ability to respond appropriately to supervision, coworkers, and work pressures is markedly impaired.

Tr. 510.

The ALJ afforded Dr. Holt's opinion "some weight," because "claimant's presentation at the consultative psychological evaluation was not entirely consistent with the claimant's presentation in other clinical settings . . . ."[6] The ALJ also observed that claimant's treating source mental health record showed that she functioned better under stress and when dealing with others than indicated in Dr. Holt's report.[7] Claimant argues that the ALJ's decision was improper for the same reasons she asserted with regard to Dr. Osula's opinion: *i.e.,* that she has ongoing diagnoses and symptoms of mental disorders, that her therapist observed that anger affected her relationships, and that her GAF score indicated serious symptoms. Those

---

[6] Tr. 23.
[7] *Id.*

arguments are not persuasive for the same reasons discussed above. Contrary to claimant's argument, the court concludes that the ALJ properly articulated reasons for rejecting Dr. Holt's assessment, and that the ALJ's decision was supported by substantial evidence.

In summary, the court concludes the ALJ's decision was based upon substantial evidence and in accordance with applicable legal standards. Accordingly, the decision of the Commissioner is due to be affirmed. An appropriate judgment will be entered contemporaneously herewith.

DONE this 19th day of October, 2018.

_____
United States District Judge